Dear Ms. Fontenot:
Your recent request for an Attorney General's opinion has been forwarded to me for research and reply. According to your request, Ascension Parish currently has a contract with Cox and Eatel whereby both companies agree to provide Ascension Parish with access to Channel 21 for broadcasting. The contract requires the `franchising authority' to set the policies and guidelines for the channel, but does not define the term `franchising authority'.
You also stated that an assistant district attorney advised that the Parish Council was the franchising authority and was responsible for setting guidelines for the channel. Accordingly, a citizen's advisory board was set up by ordinance and passed guidelines to oversee Channel 21. The parish president, however, used his veto power provided in Section 3-04 of the parish's home rule charter and the veto was upheld by the Council by failing to override the veto by the two-thirds majority vote required under the Section.
You seek an Attorney General's opinion on the following matters:
 (1) Can the parish president under the Charter, veto a citizen's advisory board and guidelines and policies that the governing/franchising authority has approved for the local access channel with Cox and Eatel?
 (2) Is the board and/or guidelines part of "governing authority procedure" as referenced in Section 3-04 which would be exempt from a presidential veto?
 (3) Please clarify what "without limitation" means at the beginning of 4-12. *Page 2 
 (4) How can the Council create necessary oversight and policies needed to manage the government access channel when these are repeatedly vetoed by the executive branch and upheld by a minority of council members? Is there any other legislative option for the Council?
Initially, we note that the Ascension Parish governing authority is the franchising authority referred to in the contracts. The Federal Communications Act of 1934 grants power to a franchising authority to grant a cable television operator a franchise and "establish requirements in a franchise with respect to the designation or use of channel capacity for public, educational or government use . . ." 47 U.S.C. 531. The Act also defines `franchising authority' as "any governmental entity empowered by Federal, State, or local law to grant a franchise." In this case, Section 4-14 of the Ascension Parish Home Rule Charter grants the power to act as franchising authority to the governing authority. It states, "The governing authority may grant a franchise . . . but such franchise or privilege of any character whatever shall not be granted for a period of longer than twenty (20) years."
We also note that the parish's home rule charter grants to the governing authority the right to create advisory boards. Section 4-12(e) provides that "Advisory boards and commissions may be created by an ordinance approved by a majority vote of the entire governing authority. Members of advisory boards or commissions shall be appointed and/or removed by the parish governing authority, but shall report to the parish president." As its name suggests, the citizen's advisory board may advise the governing authority on which regulations to adopt regarding Channel 21. The advisory board does not, however, have any legislative power and cannot pass ordinances. Legislative power is expressly reserved to the governing authority in Section 4-10 of the Charter.
With regard to your first two questions, Section 3-04 of the Ascension Parish Home Rule Charter, entitled "Presidential Veto," provides as follows:
 The president may veto any ordinance, code, resolution, or line item in the budget ordinance within ten (10) days after enactment. The right to veto shall also extend to disapproving or reducing individual appropriation items in the budget or any ordinance, code or resolution, except appropriations for auditing or investigating any part of the executive branch or those that propose amendments to the home rule charter or establish, alter, or modify governing authority procedure. Whenever the president exercises the veto, he shall immediately notify all governing authority members of the action by the same methods of notification of a special meeting as spelled out in Section 4-05(B). The president shall call a special meeting of the *Page 3 
governing authority to be held within ten (10) days of the veto, unless a regular meeting is to be held within the ten (10) day period. At such meeting the governing authority may override the veto and adopt the ordinance by a favorable vote of at least two-thirds of its members.
It is clear that the parish president has broad discretion on when to exercise his veto power. Unless the veto of an ordinance creating the citizen's advisory board or establishing guidelines recommended by said board would "establish, alter, or modify governing procedure," the parish president is free to use the veto power.
We will now consider whether the ordinances establishing the advisory board and their guidelines are procedural. Procedural rules govern the manner in which hearings, administration and enforcement of rights are conducted. Substantive laws, on the other hand, create, confer, define, destroy or otherwise regulate existing laws. See Adams v. City of Baton Rouge,673 So. 2d 624, 633, (La.App. 1st Cir. 1996). Neither ordinance in the instant case establishes, alters or modifies governing procedure. Instead, one ordinance creates a new body to regulate the law and the other ordinance sets forth the regulations. Therefore, because each ordinance is substantive rather than procedural, they are both subject to veto by the parish president.
You also seek clarification on what "without limitation" means as used in Section 4-12 of the Charter. The section states that "Without limitation of the foregoing authority or other powers given to it by the charter, the governing authority may . . ." The sentence is followed by subsections (a) through (k) which list the general powers granted to the governing authority. The words "without limitation" simply mean that nothing preceding Section 4-12 should be read to prevent the governing authority from carrying out any of the powers described in subsections (a) through (k). It does not, however, mean that the governing authority can carry out the general powers described in the subsections without any limitations or restrictions imposed on it.
Finally, when the policies created to regulate Channel 21 are vetoed by the parish president and the veto is not overruled by the governing authority, the ordinance does not become law. At that time, the governing authority is free to pass a new ordinance. If it is not vetoed within ten days of enactment, as provided by Section 3-04, the new ordinance becomes law. *Page 4 
We trust this adequately responds to your inquiry. Should you have further questions or comments, please do not hesitate to contact our office.
 Very truly yours,
 CHARLES C. FOTI, JR.,
 Attorney General
 BY: __________________________
 CHARLES H. BRAUD, JR.
 Assistant Attorney General